Court will now call the case 5-16-0047 and read the Parentage of K.M.L., a minor. Counsel for the appellant may proceed. Good afternoon. May it please the Court, Counsel. Your Honor, this is a parentage action involving custody and visitation, amongst other issues. On appeal, there are primarily three issues before you today. The first issue is a violation of Illinois Supreme Court Rules 213 and 218, a failure of the trial judge to accuse himself, and lastly, whether or not the Court's determination regarding the custody and parenting time was against the manifest way of the evidence. Today I'll be primarily addressing the first two issues, and will stand on my brief for the remaining issues. There are some basic facts which are pertinent to the Court's understanding of the arguments today. First and foremost, this is a case about two parents who were never married, so this is applying the Parentage Act. Shortly after the birth of a minor child, the father, Douglas, the appellant here, brought the petition to determine parentage and custody. This was set for a three-day trial. This trial was conducted over three afternoons, April the 17th, May the 11th, and June the 12th. Prior to the very first day of trial, there was a telephone conference, final pretrial, with the Honorable Judge Lowley and myself, Megan Bush, the appellee, failed to appear at that time. At the beginning of the first day of trial, I objected to Ms. Bush presenting any witnesses in violation, because she had failed to disclose any pursuant to Rule 213. The interrogatories were sent out well in advance, and she had answered them well before the trial date began. The trial court ruled against my objection and ordered that Ms. Bush would disclose her witnesses at the end of the first day. During cross-examination of Douglas Longstreet, who was the first witness to testify, testimony was introduced that Douglas Longstreet was a felon. The trial court immediately interrupted at that point, and the Honorable Judge Lowley stated that he was aware of the burglary conviction, cited to the case designation 05-CF-41, and stated very specifically that he was the prosecutor, to which Douglas Longstreet replied, were you? Oh, okay, I remember now, thereby showing his surprise and his unfamiliarity with the judge as his prosecutor. No further opportunity was offered to the parties to object to the trial judge continuing on, and the Honorable Judge Alan Lowley did not remove himself from the case. At the completion of Douglas's testimony, both his direct and his cross, Douglas made a motion to exclude witnesses. At that point in time, I would remind you that no witnesses had been disclosed by the appellee. The court at that time granted the motion and asked any witnesses or potential witnesses to remove themselves from the courtroom. After the first day of trial, Ms. Bush subpoenaed the medical records for the minor child and subpoenaed the doctor who was the treating physician, Dr. Amanda Behrman. At the second afternoon of trial, which would have been on May the 11th, the court acknowledged receipt of two disks. These disks contained the medical records for the minor child. The court at that time ordered Ms. Bush to copy those records and provide them to myself within seven days. The disks were supposed to contain all of the medical records, and I believe that they did, but only half of the medical records were provided to my office. It was not until the last day of trial and testimony of Dr. Amanda Behrman that Douglas Longstreet and I became aware that we did not have all of the medical records. When Dr. Behrman testified that she had seen the child approximately ten times, and only five of the records had been submitted to my office in violation of the court's order to produce those records. Now, how did it come about that part of the records were missing? Are you contending that it was the appellee? It is the contention of the appellant that the appellee intentionally withheld the medical records. The suspicious part here is that the five or six medical records which were not provided to myself and to the appellant contained all of the evidence of the diaper rash, which was the primary medical issue which we were bringing before the court. At that time, after the initial trial was concluded, there was a motion to reconsider trial by the appellant, and then a subsequent amended motion after the records were finally obtained and it was determined that the records had not all been produced to the appellant. But wasn't there a subpoena du cas tecum that was issued upon the doctor? There was a subpoena to the doctor by the appellee, and she was supposed to have received the entire medical record. It is her position that she did not receive it, and she had to go and get the other half of the records. But prior to that final day of trial, she had the entire records. The entire records were never produced to my office. And there was no way for, because those records were solely in her possession, there was no way for myself or for the appellant to become aware that we did not have all of the medical records until we subpoenaed them at the completion of the trial after having heard the full testimony of Dr. Bierman regarding the extensive visits with the minor child. So was this a mix-up of the doctor's office that the entire records were produced? That is the contention of the appellee, Your Honor. I do not believe that to be true. There's a deposition which is a part of the record which clearly shows that prior to the final day of trial beginning, and prior to bringing the records to my office, Ms. Bush in her deposition admits that she had the full record in her possession. So within the seven days of initially getting those documents on May 11, she was ordered to provide all of them, the whole record, to my office. She failed to do so, but she did admit in her deposition that she had all of those records. What impact does that have on Dr. Bierman's testimony when she said that essentially the diaper rash didn't have anything to do with what? Well, the diaper rash issue, she testified, Dr. Bierman testified that there wasn't a history of this and it wasn't an ongoing issue. However, upon receiving the entire medical record, all of the records that were missing show a history of diaper rash. Each and every single one of those visits that were not disclosed initially contained evidence of that diaper rash, which would refute the doctor's testimony that this wasn't something that the child had a history of. I think that's incredibly important to the ultimate determination of the court, particularly where the trial judge relied so heavily in his initial order entered in August regarding the termination of custody and visitation. He relied so heavily on Dr. Bierman's assessment of that situation. Had those records been in the possession of the appellant, we would have been able to better question the doctor and determine exactly what the facts of the situation were. Along the same vein, there is an ongoing pattern here of the discovery violations which have occurred. First and foremost, Rule 213 requires that a party must varnish identities of witnesses, addresses, and the subject of their testimony. The appellee failed to provide any of the witnesses no names, no anything, until the completion of the first half day of trial. At that point in time, two of Douglas's, the appellant's witnesses, had testified at that point. She was able to then shape her case after seeing where our case was going, and only after that subpoenaed the medical records for the minor child and subpoenaed Dr. Bierman. And she also failed to provide, and there's Rule 218 as well, which sets deadlines for disclosures. Rule 218 provides that all dates set for disclosure of witnesses shall be set to ensure discovery is completed no later than 60 days prior to the date the trial commences. Clearly this didn't happen as discovery for the appellee continued to go on throughout three days of trial. This was never completed prior to trial and to the distinct disadvantage of the appellant. A couple of cases that are cited to in my brief, and which were also relied on in this court in its recent decision in re the marriage of Donosky, which I believe is the most factually correct and on-point case regarding the violation of the 213 violations. This court cited 2DOT v. Krull. This is a case involving an undisclosed opinion on how to calculate fair market value-grade property. The fourth district in that case said that Rule 213 is a mandatory rule that courts must follow. To ignore 213's plain language defeats its purposes and encourages tactical gamesmanship. They also rely on the Warneger Court. In Warneger v. Millsap, this is the second district case from 1999, a personal injury suit was initiated regarding the defendant's failure to timely disclose her opinion witnesses. This case was reversed and remanded for failure to adhere to the rules of discovery. The court specifically stated Rule 213 and Rule 218 work together to ensure that upon written interrogatory and no later than 60 days prior to trial, the parties disclose all witnesses. I would note for the court that in its responsive brief, the appellee fails to address Rule 218 altogether. I make mention in my brief and also bring it up to the court today that this was a pro se litigant. And the Honorable Judge Lully was more lenient, I believe, with the pro se litigant than he should have been. There's a whole litany of case law, including the cases cited in my brief, Holtz, Reiter, Viorth, which states that pro se litigants' failure to follow the rules and procedure means that they will be held to the same standards and they do not get more lenient treatment than attorneys. There's a level playing field law that's contained within the Illinois Marriage and Dissolution of Marriage Act. Had the pro se litigant needed assistance in presenting her case, she could quite easily have filed a motion or simply even ask the court for assistance on getting an attorney. I think the court would have been advised to her of how to get an attorney. The appellant was quite pleased whenever the appellant did finally seek counsel, which she has now, who is here on her behalf today. Clearly, she had the ability to do so at the time of trial. She merely used her, what I will refer to as ignorance of the procedural requirements, to her benefit. I've already made reference to the very important case in Reign Marriage of Janoski. This is a March 23, 2016 decision of this court, which has very, very similar factual basis. Here, the trial court allowed the previously disclosed lay witness grandmother to testify as an expert, but she was only disclosed as an expert the night before the trial. The appellee, incorrectly in its responsive brief, states that this is a Rule 23 case. Well, that is not true. This is a very, very similar case, and this case cites to both Warrenger and the Department of Transportation v. Crow just as the appellant has. It's very, very factually similar in that the disclosure, except in that case, the disclosure was simply as to the attending witnesses of a grandmother, whereas in this case, there was no disclosure prior to the beginning of trial. None whatsoever. Not about a single opinion, but none. The witnesses, however, did not testify for almost 30 days afterwards. That is correct. However, like I stated, the opinions of Dr. Bierman were never disclosed. If you look at the record and the trial transcripts, you will see the constant and ongoing battle to obtain responses from the appellee. The appellee, on the stand, when questioned by the appellant and by myself, refused to give straight answers, refused to cooperate. And I think if you read the transcripts, you can see that ongoing unwillingness to cooperate and adhere to the requirements and the procedures that are set in place for a very specific reason, and that is for the interests of fairness and justice. In determining whether to rule on 219 sanctions, the court was to consider six factors. Those factors are surprise, the prejudicial effect, the nature of testimony, the diligence of an adverse party, the timely objection, and the good faith of the party calling the witness. I assert that if we look at all six of these factors, we can find that the appellee failed to adhere to those requirements, and the court should have barred any of these witnesses from testifying. First and foremost, there was surprise. Not only were we surprised at the witnesses that were testified, but the opinions that were allowed to be presented. My client, Mr. Longstreet, the appellant, had been waiting over a year for his day in court. He filed his petition for parentage just shortly after the child was born. Yet, because of circumstances out of his control, his former attorney was appointed state's attorney, and he had to seek other counsel for the delaying matter. There was plenty of time there for Ms. Bush to present her witnesses and to place every bit of the evidence that is required of her pursuant to Rule 213 on the record. However, she never did this. Again, I bring up the issue of the undisclosed medical records, which I believe were intentionally brought out. The prejudicial effect is that Ms. Bush was allowed to hear the whole first day of the appellant's evidence, thus giving her the taxable advantage. We did not know who her witnesses were going to be prior to that, and a motion to exclude witnesses was only made after the direct test and cross-examination testimony of the appellant. Now, having made that motion before would have been moot, as no witnesses had been disclosed, and the Court could not order the disclosure of those witnesses until the completion of the first day of testimony. It is clear that the nature of the testimony here is both lay and expert. We've got a wide spectrum. None of the witnesses were disclosed. None of the basis of their testimony was disclosed prior to trial, and when asked the basis of their testimony, very little was given to counsel, following the same theme, that there is an issue with the appellee providing the proper amount of disclosure. Thank you, counsel. You'll have an opportunity for a rebuttal. Thank you. Counsel? Chief Justice, may I please the Court? Counsel. My name is Kaylee Benton from Dev & Dev Attorneys, and I represent the appellee, Megan Bush, in the instant appeal. As counsel stated, there are three issues before Your Honors this afternoon. The first being whether the trial court erred in allowing the appellee's witnesses to testify, to which counsel addressed in detail. Second, whether the Honorable Judge Lilly should have recused himself. And third, whether the trial court's rule regarding custody and visitation was against the manifest weight of the evidence. It is the Respondent's position before this Court that the decision of the trial court should be affirmed and upheld, as no abuse of discretion was exercised by the Honorable Judge Lilly or Judge Parker, who ultimately ruled on the issue of the recusal of Judge Lilly. An important fact to address to the Court that was left out by counsel, just background information for Your Honors, is that there was a temporary order entered and drafted by counsel of Mr. Longstreet alone, all while my client remained pro se. It was entered with the Court August 20, 2014, by agreement, drafted again at the count by the counsel of Mr. Longstreet. That provided my client with sole custody, as it was known then. The other issue, or the other facts, will rely on my brief. The first issue, therefore, before Your Honors, is whether the trial court erred in allowing Gavilee's witnesses to testify. Counsel stated this as governed by the Illinois Supreme Court Rules 213 and 218. There was discovery propounded on my client. There was. And she did respond to it. Did she respond to that question about witnesses? No. It was addressed at the very beginning of the trial, before Judge Lilly, on April 17, 2015. The Respondent stated she hadn't understood the question. The Judge told her what the question meant, and told her he would give her time to answer the question to disclose her witnesses. There was no malice on the point of the Respondent. Briefly, there were witnesses disclosed, and those were the only witnesses that testified. As counsel stated, the purpose of the discovery rule is to prevent unfair surprise at trial. It cannot be argued there was unfair surprise at trial, as Your Honor pointed out, there was almost 30 days that lapsed between each court appearance. April 17, May 11, June 12. Counsel's own case-in-chief was not completed at the conclusion of the day on April 17, 2015. And therefore, continuance was mandated by the court in order to continue and complete the case-in-chief of the petitioner alone. It was continued to June 12. At the conclusion of the evidence on April 17, the pro se Respondent gave the names and spelled the names of all the witnesses she intended to call. Just five days later, she issued a subpoena to Dr. Bierman to appear before the court at the next court appearance. Those were the only witnesses that testified. Would you tell me, explain to me your version of what happened with the records, Dr. Bierman's records? Yes, Your Honor, gladly. As Your Honor pointed out, there was a subpoena ducas tecum, which was provided by my client, served upon Dr. Bierman, and requested a response. Those discs were handed to and provided to the Shelby County Circuit Clerk. As the record provides, my client took those CDs, discs at the direction of Judge Lowley, copied the CDs, and gave copies to counsel. There is no records whatsoever to substantiate the argument of counsel that anything was withheld by my client. In fact, the opposite is what holds true. During the deposition of my client after I was retained, and during the deposition of Nancy Blackwell, the employee who had created the records, it was specifically stated. Nancy said, I must have made a mistake. It was specifically stated. Judge Lowley addresses that in his ruling as well, December 31, 2015, saying there was no evidence to substantiate that claim by counsel. My client never admitted on the record, never admitted during her deposition that there was anything withheld. And there was no evidence to support the discs provided to counsel, and the discs provided to the court did not match. What counsel fails to point out to the bench is that the admission of evidence is specifically given to the trial court. It's a sound discretion for the trial court as to when to admit evidence and when to bar it. It was not an abuse of discretion to allow the witnesses to testify for three reasons. One is the witnesses were disclosed at the close of the evidence on the first day of trial, April 17. It wasn't until May 11 the case resumed. There was no action by the petitioner to collect any information, to depose any witnesses that had been disclosed, including Dr. Rearman. It wasn't until after the conclusion of all of the evidence that there were any depositions set whatsoever in this case. That cannot be deemed diligence by the petitioner to gather evidence. The second issue is because no continuance was necessary. Counsel points to case law which alleges that there is an abuse of discretion to allow witnesses to testify in the event that the party must choose between continuing the case which they've waited for their court appearance or relying on their objection moving forward to trial. In this case, no continuance was mandatory for the disclosure of witnesses as the continuance was already necessary. Judge Lowley states at the beginning of evidence on April 17 that the matter was going to have to be continued to another date, and it was ultimately continued to May 11. Dr. Rearman, in fact, did not even testify by phone until June 12, the last day of evidence. So there's almost 60 days from the date of disclosure to the date she ultimately testified. The third reason that it was not an abuse of discretion to allow the witnesses is because the subpoena was issued to Dr. Rearman and served upon counsel just five days after the conclusion of the evidence on April 17. That subpoena was provided to counsel who had adequate notice, therefore, that Dr. Rearman would be testifying and would be appearing. In Pankow v. Sine, which is cited in my brief, Illinois law has further held that a subpoena has been issued, although the witness may not have been disclosed in interrogatories, that that evidence can be allowed. It has further been held in Illinois, in Phyllis v. Gennady, that the purpose of discovery sanction is not to punish, but to ensure fair discovery and a trial on the merits. That still happened here, despite the nondisclosure of the witnesses during the interrogatories. In Gennady, the trial court had actually barred a witness from testifying who had not been disclosed, and the witness was going to testify about the speed of a vehicle. The appellate court reversed the trial court and said that was an abuse of discretion to bar that evidence because barring of the evidence is the last remedy that a court should use. It says that the evidence was an abuse of discretion as the court should have allowed a continuance in the interest of justice for the opponent of the evidence to depose the expert. That continuance was already in place. Judge Lowley specifically said it before evidence even began on April 17th that another date was going to be necessary. And then another date after that ended up being necessary to complete the case as well. The second issue is whether the petitioner failed to make a timely objection regarding the exclusion of witnesses. That was briefly addressed by counsel. The petitioner did not make the motion to exclude witnesses until after the petitioner had testified. As Judge Lowley points out in his December 31, 2015 order, the petitioner clearly was familiar with the respondent's mother, who was one of the witnesses that remained in the courtroom. During his own testimony, he stated he knew her. They were familiar with each other. However, no motion was made by the counsel for the petitioner or by the petitioner to exclude witnesses until after the petitioner had testified. That is not the fault of the respondent. Once the motion was made, despite it being untimely based on previous Illinois decisions, Judge Lowley granted that motion and continued it for each following trial day. Illinois law has held that the exclusion of witnesses is within the sound discretion of the trial court. The court has held that the correct time to make that objection is before any witness has testified at all, giving stability and applying impartiality across the board. So despite the motion to exclude witnesses being untimely at the fault of the petitioner, Judge Lowley granted the exclusion and dismissed the witnesses. Illinois case law has held in Blancas v. South Suburban Safeway that when a trial court granted a tardy motion to exclude witnesses, that it should have been denied because it was untimely. However, because no harm and no abuse of discretion, the ruling of the trial court was not overturned. Here, after the plaintiff had began their case in chief, the motion was made. Judge Lowley points out in his December 31, 2015 order regarding the amended motion to reconsider, at the beginning of the hearing on April 17, 2015, the respondent stated for a fact that her mother would be testifying. The later witnesses were not confirmed until the end of the hearing on April 17. The mother was the one in the courtroom. The petitioner was aware of the mother through his own direct examination by his own counsel. Counsel correctly stated that there are factors for this court to consider in regards to the disclosure or the late disclosure or the nondisclosure of the witnesses. That the surprise of the adverse party, the prejudicial effect of the testimony, the nature of the testimony, the diligence of the adverse party, the timely objection of the testimony, and the good faith of the party calling the witness. There was no surprise here of the witnesses that were called by the respondent. They had been disclosed, over 30 days went by before the next court appearance, and no action was taken by the petitioner. There was no surprise here of the witnesses that ultimately testified. There also was no prejudicial effect as the motion to exclude the witnesses was not made until after the petitioner had testified. That is the only evidence those two witnesses heard. A motion to exclude witnesses is not a guarantee to any counsel in any court appearance. It is a motion that is made before the court. Once that motion was made, the motion was granted. The nature of the testimony is also to be considered. The nature of the testimony on all witnesses presented by the respondent was just in response to the questions and the testimony of the petitioner. There was nothing presented outside of what had been alleged and presented at the case in chief of the petitioner. So the nature of the testimony was in the scope of the petitioner's own case in chief. The diligence of the adverse party, that's a major factor for this court. The diligence of the adverse party, once those people were disclosed by the respondent, by the prospects, they responded in accordance with what Judge Foley ordered her to disclose. There was no diligence whatsoever done by counsel. No depositions, no telephone calls were presented, no evidence whatsoever to contact or depose any of those witnesses. The only depositions that were ever scheduled were after the conclusion of evidence. Lastly, the good faith of the party calling the witness. Ms. Bush specifically stated to the court at the beginning of the court appearance on April 17, 2015, that she hadn't understood the question. That cannot be a violation of good faith. Once the question was explained to her, she disclosed the witnesses she intended to call, and she intended to not call anyone else instead of the list that was presented in open court. She further issued a subpoena, herself a pro se litigant, served the subpoena on counsel, had the doctor disclose the medical records which were provided to the court, had the doctor appear by telephone conference by agreement of the parties to testify via telephone conference on June 12. It was not an abuse of discretion to allow the petitioner to present witnesses. The second issue before this court is whether the trial court correctly ruled that Judge Loley did not have to recuse himself. The standard of review of this issue was also an abuse of discretion and was governed by Illinois Supreme Court Rule 63. Illinois law has expanded on this rule and has further provided that the test is that of a reasonable person. In this case, the Honorable Judge Loley, during the first day of trial, revealed to the parties that he had prosecuted the petitioner for a felony over ten years prior to the court appearance. It was the petitioner who put felonies in question, pointing out the relationship the respondent had with a past paramour. It was only on cross-examination pointing out the fact the petitioner had also been a convicted felon that the evidence became before the court. Judge Loley did not attempt to withhold information or not disclose it. He said he had prosecuted it. No objection was made by the petitioner or the respondent, and the case continued. Counsel states she wasn't given the opportunity to object. Objections are not made at specific times during trial, as your honors all know. They are made at the time that the issue arises. No objection was made. No objection was made until after the petitioner was unhappy with the result. The case continued for three trial dates, April 17th, May 11th, and June 12th. No filings, no objections, no questions, no further inquiries were part of the court's record. It wasn't until the conclusion of the evidence that the petitioner even phrased the objection. Thank you, Counsel. Ms. Butler. Thank you. I'll try to keep this brief. First and foremost, I'd like to address the issue regarding the Q13 violation and sanctions. The appellee asserts that there was good faith on the part of Ms. Bush and that she did everything that was required to her. Yet she failed to appear at the final pretrial conference by telephone where she could have addressed this confusion or issue she had with not being able to understand what she was supposed to provide to us with a Rule 213 interrogatory. She failed to provide any witnesses, and I think the interrogatory is very clear. It says, please provide the names of the subject of testimony and addresses for all witnesses who will testify pursuant to Rule 213. I believe it's a very clear question. I don't think it's confusing. I think that this is just a refusal on the part of the appellee to adhere to the requirements. Do you agree that the standard review is abuse of discretion? I agree. I think that the appellee and the appellant both agree as to the standard of review on all these issues. Thirdly, she refused to answer any questions during the testimony at trial. Ms. Bush consistently refused to answer any questions yes or no. If we look at the record, you can see this, her fighting on every single issue and failing to even answer one simple question with a yes or no. She refused and failed to provide the medical records that were provided to her. She had all of those records. Ms. Coble, I've read the court's order, and the court clearly says that it was most likely the medical record custodian who failed to supply the records. Isn't that a credibility issue that the court can decide? And you're saying that it was clearly deliberately done by the mother. I believe that it was. I think her pattern of behavior speaks for itself in this case, her refusal to adhere to any of the requirements. And specifically, if we read her deposition, she states prior to the last trial date, when Dr. Bierman was to testify, she had all of the records, and she was supposed to provide them to my office. She failed to do so. So regardless of whether this was a mistake or intentional, the fact of the matter is the records were not provided. The court ordered her to do so. That did not happen. I would briefly then get to the issue regarding Judge Woolley's recusal. This is not something that can be waived. An objection cannot be waived to this where the language says the court shall. The court shall disqualify themselves in a proceeding in which the judge's impartiality may be questioned or where the judge has a personal bias or personal knowledge of a disputed evidentiary issue. Well, the case law is pretty clear that you just can't say that there was this previous involvement. You have to raise some issue that somehow brings to light a probability or a fact that that could bias their involvement in the case at point. And what occurred here? I believe that the judge's prior knowledge of that disputed evidentiary issue of the burglary felony. They say that's what the cases say is not enough, just the fact that there's knowledge of it and involvement. Well, I've referred to In re, the marriage of O'Brien, which specifically states that even the appearance of impropriety should be referenced. If Judge Woolley believed that this issue was important enough to interrupt the proceeding to make reference to and explain to everyone, clearly then this issue was important enough to him that we should have been given an opportunity to object, that there should have been a discussion ruled 63-D. Let me ask you this. Was there any objection made when that was disclosed? There was not an objection made when that was disclosed. As the appellant was on the witness stand, there was no opportunity for discussion to be had between the parties. And like I stated, this is not a waivable objection. There's no need for an objection as the Rule 63 specifically applies to the conduct of the judge. You just stated there wasn't any time to make an objection. The objection wasn't made until after the ruling of the trial court, correct? That is correct. That is correct. However, as I've asserted, Rule 63-D provides for the appropriate way of approaching the situation, and that is whenever there is a disqualifying situation, the judge should bring it to the attention of the parties, allow the parties to discuss the matter outside the presence of the court, and then if they would seek to waive that disqualifying issue, then they could do so. Judge Woolley failed to address this issue with the parties. He merely mentioned it. If it was important enough to bring it to the attention of the parties, it should have been important enough then to allow the parties an opportunity to discuss it and address the situation with the court, and that was not done. I believe that. Doesn't O'Malley stand for the proposition that our Supreme Court says that if you don't place an objection at the time of the disclosure and you wait until after the decision that it's too late, you've waived it? But I believe that O'Malley is distinguished from the incident case because it refers to a different section of Rule 63. I think it provides that that's regarding a situation where the judge had previously represented the party and is not applicable to this section of the crime. Thank you. Thank you, counsel. The court will take this matter under advisement and issue a decision. In due course, the court will be in recess.